UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARILUZ CINTRON,

                          Plaintiff,          **No. 6:17-cv-06017(MAT)**
                                              **DECISION AND ORDER**

              -vs-

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

## INTRODUCTION

Mariluz Cintron ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act, challenging the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## PROCEDURAL STATUS

Plaintiff filed an application for SSI on April 18, 2013, alleging disability since February 4, 2009, primarily due to post-traumatic stress disorder ("PTSD"), depression, and anxiety. Plaintiff's application was denied, and she requested a hearing. Administrative law judge William M. Manico ("the ALJ") held a videoconference hearing on December 9, 2014, which Plaintiff asked to postpone in order to obtain representation. It was rescheduled for April 1, 2015, and Plaintiff appeared with counsel and testified, as did impartial vocational expert Mark Pinti ("the

VE"). (T.37-63). In a decision dated April 17, 2015, the ALJ found
that Plaintiff was not disabled. (T.14-36).[1] Plaintiff's request
for review by the Appeals Council was denied on November 10, 2016,
making the ALJ's decision the final decision of the Commissioner.
This timely action followed.

Plaintiff and Defendant have cross-moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure. The Court will discuss the record evidence further
below, as necessary to the resolution of the parties' contentions.
For the reasons set forth herein, the Commissioner's decision is
reversed, and the matter is remanded for calculation and payment of
benefits.

## THE ALJ'S DECISION

At the first step of the sequential analysis, the ALJ found
that Plaintiff had not engaged in any substantial gainful activity
since April 18, 2013, the application date. (T.22). At the second
step, the ALJ determined that Plaintiff has the following severe
impairments: PTSD, anxiety, and depression. (T.22-23). The ALJ
found that her alleged impulse control disorder and
hallucinations/delusions are not medically determinable impairments

---

[1]
Citations to "T." in parentheses refer to pages from the certified
administrative transcript.

diagnosed by an acceptable medical source,[2] and accordingly are not severe.

At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T.23-25). In particular, the ALJ considered Listing 12.04, Listing 12.06A, and Listing 12.06B.

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, with the following non-exertional limitations: She can perform unskilled work with simple instructions where interactions with others are routine, superficial and related to the work performed; her interactions with others were limited to no more than approximately one third of the work day; she needs a regular work break approximately every two hours; and she cannot do fast-paced assembly work. (T.25).

At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (T.32).

At the fifth step, the ALJ relied on the VE's testimony to find that, based on Plaintiff's age (37 years-old), education (at least a high school diploma), work experience, and RFC, there are

---

[2]
Plaintiff has never alleged that she has diagnoses of impulse control disorder and hallucinations/delusions. It appears that the ALJ relied on a report concerning a different individual that was mistakenly included in Plaintiff's records.

jobs existing in significant numbers in the national economy that Plaintiff can perform. (T.32-33). Specifically, the VE identified the jobs of warehouse worker (Dictionary of Occupational Titles ("DOT") #922.687-058), of which there are 250,000 jobs nationwide and 1,500 jobs statewide; and cleaner (DOT #323.687-014), of which there are 300,000 jobs nationwide and 6,000 jobs statewide. Therefore, the ALJ found that Plaintiff was not disabled as defined in the Act. (T.33).

## SCOPE OF REVIEW

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."

Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

## I.  Failure to Properly Weigh the Medical Evidence

Plaintiff contends that the ALJ erred by failing to correctly weigh the opinions offered by various medical sources. According to Plaintiff, the ALJ erroneously assigned little weight to the evaluations provided by her therapists, licensed clinical social worker Amy Stolberg ("Therapist Stolberg"), and licensed medical social worker Ashley Bellweather ("Therapist Bellweather"), and incorrectly determined that these assessments were inconsistent with the record. (See Plaintiff's Memorandum of Law ("Pl's Mem.") at 20-26). Plaintiff also assigns similar errors to the ALJ's analysis of the report provided by examining psychologist Dr. Christine Ransom.

### A.  The Therapists' Opinions

LCSW Stolberg completed a mental RFC assessment in October 2012, after treating Plaintiff for anxiety, depression, and PTSD for over five months. (T.273-76). She opined that Plaintiff frequently interacted inappropriately with others because of her psychiatric conditions; occasionally acted violently towards herself or others, with occasional  suicide attempts and episodes of decompensation; and that her behavior occasionally interfered with activities of daily living. On mental status examination,

-5-

Therapist Stolberg noted that Plaintiff was well-groomed, cooperative and appropriate, although restless at times; her speech and thought process were appropriate, as was her affect; her mood was depressed and anxious; she had good insight and appropriate judgment; and her memory was intact. Therapist Stolberg diagnosed Plaintiff with PTSD, adjustment disorder with mixed anxiety and depression. Stressors included severe and pronounced domestic violence with related danger. Her current GAF was 50. According to Therapist Stolberg, Plaintiff was very limited in her ability to follow, understand, and remember simple instructions; perform simple and complex tasks independently; maintain attention and concentration for rote tasks; and regularly attend to a routine or maintain a schedule. The form defined "very limited" as unable to function 25 percent or more of the time. Therapist Stolberg opined that Plaintiff was moderately limited in her ability to perform low-stress and simple tasks. The form defined moderately as unable to function 10 to 25 percent of the time. Plaintiff's capacity for maintaining basic standards of hygiene and grooming was normal. Therapist Stolberg opined that Plaintiff was not able to participate in any activities except treatment for an unspecified length of time.

Therapist Bellweather completed a similar form in November 2014, after treating Plaintiff two times. (T.377-80). Plaintiff presented with PTSD, depression, high anxiety, intrusive thoughts,

and excessive worries. She experienced some forgetfulness due to her medications. With treatment, Plaintiff's suicidal ideation had improved, yet she remained chronically depressed. Plaintiff's psychiatric condition occasionally resulted in visits to the emergency room, and caused her to interact inappropriately with people, attempt abstinence from her prescribed medications, pass out, and decompensate. According to Therapist Bellweather, Plaintiff's mental impairments frequently interfered with activities of daily living. On mental status exam, Plaintiff was well-groomed but very tearful, with complaints of anxiety and depression. Her memory was intact, with good judgment and fair insight. Her GAF was 50. Therapist Bellweather opined that Plaintiff was "very limited" in her ability to follow, understand, and remember simple instructions; and maintain attention and concentration for rote tasks. She was "moderately limited" in her ability to regularly attend to a routine and maintain a schedule or perform low-stress and simple tasks. Her capacity to maintain basic standards of hygiene and grooming was normal. Therapist Bellweather opined that Plaintiff was able to participate in any activities except treatment for six months.

The ALJ accorded Therapist Stolberg's and Therapist Bellweather's opinions "little weight," noting they were not from "acceptable medical sources." (T.28-29). The ALJ is correct that the two therapists, as licensed clinical social workers, are not

considered "acceptable medical sources" under 20 C.F.R. § 416.913, and, as such, their opinions "cannot establish the existence of a medically determinable impairment." Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims, Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Nonetheless, opinions from individuals who are not acceptable medical sources must be considered by the adjudicator, since the regulations require the Commissioner to "consider all relevant evidence in the case record when [she] make[s] a determination or decision about whether the individual is disabled." Id. at *4. Clinical social workers are considered "other sources." Id. at *2. The factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) are also applicable to the evaluation of opinion evidence from "other sources." Id. SSR 06-03p explicitly contemplates that the SSA adjudicators "may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Id. SSR 06-03p recognizes that "other sources" may have "special knowledge of the individual" and may be able to "provide insight" based on this. Id. SSR 06-03p acknowledges that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of

the treatment and evaluation functions previously handled primarily by physicians and psychologists." Id. at *2-3. Thus, the fact that the two therapists are not "acceptable medical sources" is an improper basis, standing alone, to discount their opinions.

The ALJ also found that the two therapists' opinions were not entitled to more than little weight because their diagnoses allegedly differed from those provided by another therapist, LCSW Joann Rodriguez ("Therapist Rodriguez"). (T.28). As Plaintiff points out, however, this finding is based on the ALJ's factual error in reciting the record. It is true that the record contains a December 2012 assessment by Therapist Rodriguez. (See T.269-72). However, this assessment concerns an individual other than Plaintiff. Although the Monroe County Department of Human Services ("MCDHS") case number on the form appears to be the same as Plaintiff's case number, the date of birth, the patient's signature, treatment history, and diagnoses are different on the assessment completed by Therapist Rodriguez. (Contrast T.269 (completed by Therapist Rodriguez; patient's signature is illegible and does not resemble Plaintiff's actual signature) with T.273 (completed by Therapist Stolberg; signature clearly reads "Mariluz Cintron")). The diagnoses in question (major depressive disorder with psychotic features and impulse control disorder) issued by

Therapist Rodriguez[3] apply to an individual who is not Plaintiff. It is unsurprising, then, that Therapist Rodriguez's report and Therapist Stolberg's report are inconsistent. The ALJ's analyses of Therapist Stolberg's and Therapist Bellweather's opinions contain significant factual errors. This "further winnowed the amount of substantial evidence underlying the ALJ's decision[,]" Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996), on how much weight to accord their opinions.

The Commissioner argues that because the ALJ also discounted Therapist Rodriguez's opinion regarding someone other than Plaintiff, any error was harmless. It is true that the ALJ did accord Therapist Rodriguez's opinion "little weight" for the same reasons he discounted the opinions of Plaintiff's actual providers, Therapists Stolberg and Bellweather. Nevertheless, the ALJ relied on Therapist Rodriguez's report to discount Therapist Stolberg's opinion, as noted above. In addition, the ALJ discounted Plaintiff's credibility due to the absence of signs of psychosis or hallucinations, which are not symptoms related to Plaintiff's diagnoses, but presumably are consistent with the diagnoses of the individual treated by Therapist Rodriguez. The Commissioner's defense of the ALJ's error amounts to an impermissible post hoc rationalization not apparent from the face of the ALJ's decision.

---

[3] In any event, as the ALJ mentioned earlier, therapists, as other sources, cannot issue an opinion that a claimant has a medically determinable impairment. This is a dubious basis on which to discount the therapists' opinions.

E.g., Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).

The ALJ also misapplied the relevant regulations in weighing Therapist Bellweather's and Therapist Stolberg's reports by discounting their opinions on the basis that they provided "no support for their findings from any objective testing to establish the extent of [Plaintiff's] limitations." (T.28). However, "the Commissioner's regulations do not require that a psychiatric opinion be supported by more than a mental status examination and psychiatric history." Harris v. Colvin, 149 F. Supp.3d 435, 446 (W.D.N.Y. 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)).[4]

The ALJ faulted the therapists' opinions as being "highly speculative" and failing to "to provide a basis to explain how they arrived at the limitations they opined and how they were able to quantify the limitations as a percent of time." (T.28). At the outset, the Court notes that the forms which the therapists

_____

[4]

The Commissioner appears to confuse what is required to support opinion evidence with what is necessary to establish a medically determinable impairment. (See Defendant's Memorandum of Law ("Def's Mem.") at 24). Citing 20 C.F.R. §§ 404.1508, 404.1513, the Commissioner maintains that what is required by these regulations to confirm the existence of a medically determinable impairment at step two is also needed to substantiate a medical opinion regarding the functional limitations caused by such impairments. Since Plaintiff is seeking SSI under Title VI rather than disability insurance benefits under Title II, the applicable regulations are 20 C.F.R. §§ 416.908, 416.913. Former 20 C.F.R. § 416.908 provided that "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 416.908 (eff. until Mar. 26, 2017). Whether Plaintiff has a medically determinable impairment is not disputed; Plaintiff does not take issue with the ALJ's step two finding that her PTSD, anxiety, and depression are severe impairments.

-11-

were asked to complete specifically defined the functional limitations ratings in terms of percentages of time. Therefore, it is unfair to criticize the therapists for expressing their opinions in a manner that conformed to the language in the forms they were asked to complete on Plaintiff's behalf. Moreover, the SSA itself defines key words and phrases used in the disability context in terms of percentages. <u>See</u>, <u>e.g.</u>, TITLES II & XVI: CAPABILITY TO DO OTHER WORK—THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL & NONEXERTIONAL IMPAIRMENTS, SSR 83-14, 1983 WL 31254, at *2 (S.S.A. 1983) ("Two types of bending must be done frequently (from *one-third to two-thirds* of the time) in most medium, heavy, and very heavy jobs . . . . However, to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to *one-third* of the time, depending on the particular job) (emphases supplied).

The ALJ also found the opinions of Therapists Stolberg and Bellweather inconsistent with their treatment notes. (T.29-30). The ALJ, however, "cherry-picked" entries in the treatment records that supported a finding of "not disabled" while ignoring Plaintiff's therapists notations that her PTSD and anxiety symptoms continued to interfere with her functioning conclusions. (<u>See</u>, <u>e.g.</u>, T.284, 294, 343, 344). This was improper. <u>See</u>, <u>e.g.</u>, <u>Nix v. Astrue</u>, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009)

(noting that "an ALJ cannot pick and choose only parts of a medical opinion that support his determination," and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted); Sutherland v. Barnhart, 322 F. Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the [claimant]'s claims.") (citing Lopez v. Sec'y of Dept. of Health and Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984)). To further bolster his finding that the therapists' treatment notes were inconsistent with their opinions, the ALJ relied heavily on results of various positive aspects of some of Plaintiff's mental status exams. The Commissioner, however, has cautioned that observing ability to concentrate in the context of a mental status examination done during an office visit is not necessarily indicative of ability to concentrate in a work or work-like setting, and that "[g]reat care should be exercised in making assumptions about the inability to sustain attention or pace under the stress of competitive employment for a normal workday or workweek based on short term mental status or psychological testing by a clinician." Program Operations Manual System ("POMS") DI 22511-005-D. Furthermore, the treatment notes from numerous visits contain mental status exams indicating that Plaintiff had an anxious and depressed mood, negative ruminations, and intrusive

thoughts on numerous visits, which are symptoms related to Plaintiff's uncontested PTSD diagnosis. (See, e.g., T.274, 280, 286, 297, 303, 309, 317, 331, 335, 340, 344, 345, 354, 359, 360, 377).

The ALJ again misrepresented the record and interjected his lay opinion about Plaintiff's mental health by opining that her depression and anxiety symptoms worsened only when she ran out of medications. (T.30). As Plaintiff points out, the record appears to reflect only one instance of Plaintiff running out of medication (T.301), but there are a number of references to increased symptoms on other occasions (T.294, 295, 297, 329), and of various medications being discontinued because they were ineffective and new medications being prescribed. (T.312 (e.g., Celexa was not working well; Prozac was started); T.367 (Prozac dosage increased and Neurontin added in order to help increased anxiety).

**B. Dr. Ransom's Opinion**

Psychologist Dr. Ransom examined Plaintiff in January 2012, at the behest of the MCDHS, and completed an Employability Assessment Form to assess Plaintiff's eligibility for public assistance. (T.251-56). Dr. Ransom noted Plaintiff's history of being a victim of domestic violence, and that she experienced recurrent nightmares, flashbacks, intrusive thoughts, anger, and fear. Plaintiff reported that she was withdrawn and had difficulty concentrating due to intrusive thoughts. She cared for her

thirteen-year-old son, but stayed in bed while he was at school. She reported no other activities. She admitted she was not presently in mental health treatment, although she had been in treatment for PTSD and depression in Puerto Rico. Plaintiff reported one-time marijuana use at age 13.

According to Dr. Ransom, Plaintiff occasionally interacted inappropriately with others and frequently had lost a job or failed to complete education or training due to psychiatric conditions. In addition, her behavior frequently interfered with her activities of daily living. Dr. Ransom observed that Plaintiff's appearance, speech, and orientation were normal, although her mood was moderately dysphoric, and her affect moderately tense. (T.252). Dr. Ransom assessed her attention and concentration as being moderately impaired, as were her memory skills, based on testing during the examination. Plaintiff's cognitive functioning, insight, and judgment were normal. A TONI-IV test of nonverbal intelligence revealed an IQ score of 99, indicating average intellectual ability. R 253. Dr. Ransom diagnosed moderate PTSD and major depressive disorder, with marijuana abuse in remission. In Dr. Ransom's opinion, Plaintiff was moderately limited in following, understanding, and remembering simple instructions; performing complex tasks independently; maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; using public transportation; or performing

low stress and simple tasks. The form defined "moderately limited" as unable to function 50 percent of the time. (T.254). Dr. Ransom concluded that Plaintiff would be unable to participate in any activities except treatment for an expected duration of six months, but she did not indicate that Plaintiff was under a permanent disability. (T.255).

The ALJ discounted Dr. Ransom's opinion as entitled to only "little weight" on essentially the same bases as he did the therapists' opinions—that it purportedly was "highly speculative" and "unsupported by any psychological testing." (T.27-28). Again, "[b]y requiring more supporting evidence than contemplated by the regulations, the ALJ formulated his own legal standard which he then improperly utilized to assess Dr. [Ransom]'s opinion." Harris, 149 F. Supp.3d at 446. Furthermore, the ALJ misstates the record inasmuch as Dr. Ransom did administer testing (namely, "serial 3s" and "serial 7s") to measure Plaintiff's concentration and memory. (T.252-53).[5]

The Court is concerned that the ALJ's discrediting of the opinions offered by Therapist Stolberg, Therapist Bellweather, and Dr. Ransom represents impermissible "cherry-picking" of the record. See, e.g., Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an ALJ cannot pick and

---

[5]      "Serial sevens" and "serial threes" are a typical part of mental status exams assessing behavioral and cognitive functioning. See https://www.ncbi.nlm.nih.gov/books/NBK320/ (last accessed Jan. 18, 2018).

choose only parts of a medical opinion that support his determination," and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted); Sutherland v. Barnhart, 322 F. Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the [claimant]'s claims.") (citing Lopez v. Sec'y of Dept. of Health and Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984)). The ALJ accorded "significant weight" to the opinion of non-examining state agency consultant, psychologist E. Kamin, Ph.D., which supported the ALJ's decision. (T.31). Yet Dr. Kamin never personally examined Plaintiff, and courts have consistently observed that "the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight." Filocomo v. Chater, 944 F. Supp. 165, 169 n.4 (E.D.N.Y. 1996) (citing Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982)); accord, e.g., Ransome v. Colvin, 164 F. Supp.3d 427, 431 (W.D.N.Y. 2016) ("'[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight.'") (quoting Maldonado v. Comm'r of Soc. Sec., 2014 WL 537564, *15-16 (E.D.N.Y. Feb. 10, 2014)). Moreover, Dr. Kamin's report was not supported by psychological testing, which was a reason on which the ALJ relied to discount Therapist Stolberg's,

Therapist Bellweather's, and Dr. Ransom's opinions. And, it is difficult to discern how Dr. Kamin's report is any less "speculative" than their opinions, since the terms Dr. Kamin used to describe Plaintiff's functional limitations (e.g., "moderately," "not significantly") were never defined.

In sum, the Court finds that reversal is required due to the multiple factual and legal errors committed by the ALJ in weighing the medical opinions offered by Therapist Stolberg, Therapist Bellweather, Dr. Ransom, and Dr. Kamin.

## II. Erroneous Credibility Assessment

The regulations provide a two-step process for evaluating a claimant's subjective complaints. First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. If so, the ALJ next must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(b). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).

The ALJ determined that Plaintiff was "not fully credible." (T.32). He stated, "[t]he evidence supports her contention that she experiences PTSD, anxiety and depression. The evidence, however, does not support her contention regarding the severity and intensity of those impairments." (Id.). The ALJ then pointed to unspecified "[t]reatment notes" that allegedly "reflected that she did not take her medication appropriately on several occasions, or has stopped taking them [sic] for considerable amounts of time." (Id.). As discussed above, this is an inaccurate characterization of the record. In any event, where "an ALJ draws an adverse credibility inference against a claimant based on a failure to follow prescribed treatment, SSR 96-7p 1996 WL 374186 (S.S.A. July 2, 1996), provides that such an inference may not be made 'without first considering any explanations that the individual may provide, or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment.'" Canty v. Colvin, No. 6:14-CV-06713(MAT), 2015 WL 9077651, at *4 (W.D.N.Y. Dec. 16, 2015) (quoting 1996 WL 374186, at *7). Here, the ALJ did not make any such inquiry. "[T]he interests of fairness and accuracy both should have led him to ask her about the perceived inconsistency, rather than simply snap the trap closed in his written decision." Matejka v. Barnhart, 386 F. Supp.2d 198, 206 (W.D.N.Y. 2005) (precluding the ALJ from

drawing adverse inferences from issues about which he had not questioned the claimant).

The next factor on which the ALJ relied in discounting Plaintiff's credibility were her "trips to Florida and Puerto Rico," during which she "was able to cope with her anxiety." (T.32). The record reflects at most two trips to Florida for Plaintiff to visit her mother. And, Plaintiff's travel to Puerto Rico was not for rest and relaxation but rather to provide testimony against the man who committed years of domestic abuse against her. Plaintiff relocated to Rochester from Puerto Rico in late 2011, to escape her volatile domestic situation. (T.217, 278). Over the six or seven years they were together, Plaintiff's ex-boyfriend broke her fingers, set fire to her house while her son was inside, threatened her with a gun, hit her with cement, frightened her son by scaring him with masks at night, put nails in the tires of her car so they would explode when she backed up, locked her doors so she could not get out of her home, stalked her when she attempted to go to work, and shot her current boyfriend in the face in the presence of her son. Plaintiff tried to disguise herself and move several times, but her abuser tracked her down, sneaking into her apartment and hiding in her closet. Plaintiff subsequently learned her abuser had murdered several people, including a woman he burned in her car and another woman he killed by means of a drug overdose. (T.47, 52, 278). Plaintiff's abuser

eventually was captured in Florida, but he continued to stalk her through Facebook and her friends, threatening to find her no matter how long it took. (T.47-48, 55). Plaintiff explained that she became disabled in 2009, when she became too frightened to try to work; her condition worsened in 2011, when she learned her about the other women her abuser was accused of murdering. Although he was eventually tried, convicted, and sentenced to 60 years in prison, she remained afraid and anxious. She testified he was in a medium security prison, and still had access to Facebook.

Prior to and after the trips to Puerto Rico in connection with her abuser's trial, Plaintiff experienced exacerbations in her psychiatric symptoms. For instance, throughout 2012, Plaintiff expressed fears about having to testify in Puerto Rico to her providers. In November and December of 2012, Alyce Marks, R.N. saw Plaintiff for medication management and noted that appeared paranoid, depressed and anxious. (E.g., T.305-09). Therapist Stolberg arranged for an increase in Plaintiff's medication due to her anxiety symptoms around that time. (T.310). In January of 2013, Therapist Stolberg noted that Plaintiff was stressed and hypervigilant because of the upcoming court case against her abuser. (T.313). Plaintiff reported feeling a little less anxious after returning from testifying in Puerto Rico at the end of January 2013 (T.314), but in February she told Therapist Stolberg that she was continuing to ruminate about her abuser's upcoming

trial; she appeared labile, depressed, and anxious. (T.317). In April of 2013, Plaintiff related to her therapist the stressors she faced when in Puerto Rico, including having to face and speak to her abuser. (T.320). In May of 2013, Plaintiff reported to Therapist Stolberg that she was on the cusp of emotional exhaustion, between her anticipated return to Puerto Rico for the trial and the stress of a suicide attempt by her boyfriend's autistic sister. She feared she was targeted for murder in Puerto Rico to prevent her from testifying. (T.329). Although Plaintiff voluntarily traveled to Puerto Rico to testify against her abuser, it is apparent that she only did so out of a sense of obligation, not because it was enjoyable for her. It is equally apparent that these trips took a toll on her emotionally. The ALJ therefore erred in finding that Plaintiff's travel to Puerto Rico to participate in the criminal trial against her abuser undermined her credibility.

The ALJ also erroneously equated Plaintiff's relatively limited daily activities with the ability to perform substantial gainful activity on a full-time basis. "Courts in this Circuit repeatedly have recognized that '[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job.'" Harris v. Colvin, 149 F. Supp.3d 435, 444-45 (W.D.N.Y. 2016) (quotation

omitted). "A claimant is not required to be in a vegetative state before being deemed disabled for purposes of receiving benefits." Doyle v. Apfel, 105 F. Supp. 2d 115, 120 (E.D.N.Y. 2000) (finding that ALJ erred in relying on claimant's activities of daily living, "such as reading, watching TV, doing light household work, going out to dinner periodically, and taking occasional trips;" this evidence "could not support a finding that [the claimant] is not disabled" and is "not indicative of an ability to satisfactorily perform a job, much less [the claimant]'s previous job as a personnel manager") (citing Balsamo v. Chater, 142 F.3d 75, 81–82 (2d Cir. 1998); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)).

## III. Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. As discussed above, the ALJ committed factual and legal errors in weighing the assessments provided by Plaintiff's treating therapists and the examining psychologist, and cherry-picked the record in assigning the greatest weight to the review consultant's opinion. The ALJ, in evaluating Plaintiff's credibility, again cherry-picked the record and erroneously equated Plaintiff's daily activities with the ability to perform substantial gainful employment on a full-time basis in a competitive work environment. In the present case, the record is

complete, and contains multiple functional assessments by individuals who have actually treated or examined Plaintiff. Although the Therapists Stolberg and Bellweather are not "acceptable medical sources," the Court nevertheless finds that their assessments should have been given greater weight than that offered by the non-examining agency consultant, as their opinions were consistent with the opinion offered by Dr. Ransom, the examining psychologist, who is an acceptable medical source. The standard for directing a remand for calculation of benefits is met where, as here, the record persuasively demonstrates the claimant's disability, <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, <u>Butts v. Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir. 2004). Further administrative proceedings would serve no purpose. Accordingly, remand for the calculation of benefits is warranted. <u>See</u> <u>Parker</u>, 626 F.2d at 235.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision must be reversed as it is the product of legal error and is not supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed and the matter is remanded for calculation and payment of benefits.

-24-

Defendant's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    January 23, 2018
          Rochester, New York.